**Electronically Filed
Intermediate Court of Appeals
29562
22-FEB-2011
08:17 AM**

NO. 29562

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


ANDRINA COCHRANE and RICHARD COCHRANE,
Plaintiffs-Appellants,
v.
BEN K. AZMAN, M.D., and BEN K. AZMAN, M.D., INC.,
Defendants-Appellees,
and
DOES 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 06-1-0205(3))


MEMORANDUM OPINION
(By:  Foley, Presiding J., Fujise and Leonard, JJ.)

In an appeal arising out of allegations of medical malpractice, Plaintiffs-Appellants Andrina Cochrane (Mrs. Cochrane) and Richard Cochrane (Mr. Cochrane) (collectively, the Cochranes) appeal from the Judgment filed on July 30, 2008 in the Circuit Court of the Second Circuit[1] (circuit court).  The circuit court entered judgment in favor of Defendants-Appellees Ben K. Azman, M.D. and Ben K. Azman, M.D., Inc. (collectively, Dr. Azman) and against the Cochranes.

On appeal, the Cochranes contend the circuit court erred when it (1) failed, as a matter of law, to strike or exclude Dr. Azman's expert testimony on medical issues because

---

[1]  The Honorable Joseph E. Cardoza presided.

the testimony lacked foundation; (2) failed, as a matter of law, to instruct the jury that Dr. Azman (or a member of his staff) was negligent in failing to take and record Mrs. Cochrane's blood pressure at each of her office visits; (3) refused to instruct the jury, as a matter of law, that Dr. Azman was negligent when he failed to advise Mrs. Cochrane of her increased risk of stroke due to her family medical history; (4) failed to instruct the jury that Dr. Azman had a duty to warn Mrs. Cochrane of certain risks, specifically her significantly increased risk of stroke; and (5) failed to instruct the jury that Dr. Azman owed a fiduciary duty to his patient.[2]

## I.   BACKGROUND

On June 14, 2006, the Cochranes filed a complaint for medical malpractice against Dr. Azman, alleging that medical services he provided to Mrs. Cochrane resulted in her personal injuries.

On August 8, 2006, Dr. Azman answered the complaint and did not assert any counterclaims, cross-claims, or third-party claims.

The case proceeded to a three-week jury trial on the merits, resulting in a jury verdict in favor of Dr. Azman and against the Cochranes.

On July 30, 2008, the circuit court entered the Judgment in favor of Dr. Azman and against the Cochranes on all of the Cochranes' claims.

---

[2] The Cochranes' opening brief fails to comply with Hawai̇i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) by failing to include in the statement of the points of error "(ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency." In addition, the Cochranes fail to comply with HRAP 28(b)(4)(B) by failing to provide, "when the point involves a jury instruction, a quotation of the instruction, given, refused, or modified, together with the objection urged at trial." Where "lengthy parts of the transcripts that are material to the points presented" are included in an appendix, as the Cochranes explain in their reply brief, that does not excuse them from providing in the points of error where in the record the instruction and objection are found. The Cochranes' counsel is warned the future non-compliance with HRAP 28(b)(4) may result in sanctions against them.

On August 8, 2008, the Cochranes filed (ex officio[3] with the appellate court clerk): (1) a Motion for New Trial pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 59(a), and (2) a Motion for Judgment as a Matter of Law pursuant to HRCP Rule 50(b). The circuit court held a hearing on November 7, 2008 on the two motions.

On December 5, 2008, the circuit court, by way of a telephone conference call with the parties, placed its ruling denying both motions on the record. On December 23, 2008, the circuit court entered an "Order Denying Plaintiffs' Motion for New Trial, Filed August 8, 2008" and an "Order Denying Plaintiffs' Motion for Judgment as a Matter of Law, Filed August 8, 2008."

On December 24, 2008, the Cochranes filed a motion pursuant to HRAP Rule 4(a)(4) to extend the 30-day time period for filing a notice of appeal. Dr. Azman filed a statement of no opposition to the motion. On December 26, 2008, the circuit court granted the motion, based on "excusable neglect," and extended the time "within which to file a notice of appeal in this case, through and including January 7, 2008 [sic]."

On January 2, 2009,[4] the Cochranes filed their Notice of Appeal.

## II.   STANDARDS OF REVIEW

### A.   Admission of Expert Testimony

Hawaii Rules of Evidence (HRE) Rule 702 sets forth the requirements for qualification of an expert witness:

> Rule 702 Testimony by experts. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. In determining the issue of assistance to the trier of fact, the court may consider the trustworthiness and validity of

---

[3] The ex officio filing date of any document prevails over the file-stamped date to the extent that the dates differ from each other. Hawaii Revised Statutes (HRS) § 606-1(b) (1993); HRS § 606-8 (1993); Rules of the Circuit Courts of the State of Hawai'i Rule 2.1; HRAP Rule 25.

[4] January 2, 2009 is the ex officio filing date.

3

the scientific technique or mode of analysis employed by the proffered expert.

"[W]hether a witness qualifies as an expert is a matter addressed to the sound discretion of the trial court, and such determination will not be overturned unless there is a clear abuse of discretion." Larsen v. State Sav. & Loan Ass'n, 64 Haw. 302, 304, 640 P.2d 286, 288 (1982). "In applying [HRE Rule 702], the trial court must determine whether the expert's testimony is (1) relevant, and (2) reliable." Ass'n of Apt. Owners of Wailea Elua v. Wailea Resort Co., 100 Hawaiʻi 97, 117, 58 P.3d 608, 628 (2002). "The trial court's relevancy decision under HRE 702 is reviewed de novo[.]" State v. Keaweehu, 110 Hawaiʻi 129, 137, 129 P.3d 1157, 1165 (App. 2006). "The trial court's determination as to reliability is reviewed under the abuse of discretion standard." Ass'n of Apt. Owners of Wailea Elua, 100 Hawaiʻi at 117, 58 P.3d at 628.

### B. Jury Instructions

"The standard of review for a trial court's issuance or refusal of a jury instruction is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawaiʻi 286, 297, 141 P.3d 459, 470 (2006) (internal quotation marks and citation omitted). "Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." Nelson v. Univ. of Hawaii, 97 Hawaiʻi 376, 386, 38 P.3d 95, 105 (2001) (internal quotation marks and citation omitted). Generally, instructions that are found to be an erroneous articulation of the law raise a presumption that they were harmful. Turner v. Willis, 59 Haw. 319, 326, 582 P.2d 710, 715 (1978). The presumption can be overcome if it "affirmatively appears from the record as a whole that the error was not prejudicial." Id.

The boundaries of the trial judge's discretion in informing the jury of the law applicable to the current case are defined "by the obligation to give sufficient instructions and the opposing imperative against cumulative instructions." Tittle v. Hurlbutt, 53 Haw. 526, 530, 497 P.2d 1354, 1357 (1972). The court's refusal to give an instruction relevant under the evidence that correctly states the law is prejudicial error if the point has not been adequately and fully covered by other instructions. Sherry v. Asing, 56 Haw. 135, 144, 531 P.2d 648, 655 (1975).

## III. DISCUSSION

### A. THE CIRCUIT COURT DID NOT ERR WHEN IT ALLOWED DR. AZMAN AND HIS EXPERT WITNESS, DR. ROSSI, TO TESTIFY REGARDING THE APPLICABLE STANDARD OF CARE.

In Hawaiʻi medical malpractice actions, the plaintiff carries the burden of proving, through expert medical testimony, that (1) a defendant doctor failed to follow the applicable standard of care, (2) the breach was a legal cause of injury to the plaintiff, and (3) the plaintiff was injured. Craft v. Peebles, 78 Hawaiʻi 287, 297-98, 893 P.2d 138, 148-49 (1995); Hawaiʻi Civil Jury Instruction 14.1. To establish the standard of care, testimony of an expert is needed because "a jury generally lacks the requisite special knowledge, technical training, and background to be able to determine the applicable standard without the assistance of an expert." Craft, 78 Hawaiʻi at 298, 893 P.2d at 149 (internal quotation marks and citation omitted).

At trial, Dr. Azman testified that he followed the applicable standard of care when he did not take Mrs. Cochrane's blood pressure on a regular basis. His opinion was based on his medical training, reading, medical education, and consultations with fellow physicians, but he could not cite to a particular treatise, article, medical journal, seminar, or discussion with any colleague to support his opinion.

Dr. Rossi, Dr. Azman's expert witness and a neurologist, acknowledged during his voir dire that he had served as an expert witness on several occasions, but it was the first time he had testified as to standard of care. He stated that his opinion on the applicable standard of care was based on his expertise and experience in the medical field, "including any interactions with primary care physicians, general practitioners, other doctors who have served in primary care settings." He also testified that he based his opinions on "reasonable medical probability." Dr. Rossi stated that Dr. Azman acted within the standard of care in treating Mrs. Cochrane on November 19, 2003. He disagreed with the Cochranes' expert that Joint National Committee reports (JNC reports) established a standard of care. He stated that those were guidelines and recommendations "and not meant to supplant the physician's judgment." He acknowledged that the JNC reports recommended that in a primary care setting, the "blood pressure should be taken frequently, if not at every visit." He went on to state "[b]ut I do not read them or interpret them to require that there be a blood pressure done at each and every occasion."

The Cochranes agree that Drs. Azman and Rossi were "educated and licensed medical professionals, qualified to express expert medical opinions." However, the Cochranes maintain that "the testimony [Drs. Azman and Rossi] gave with respect to the applicable standard of care and whether it had been met was unreliable because it was entirely without support." (Emphases in original.) They maintain that the testimony was without foundation and therefore, inadmissible, because the witnesses could not cite to any specific "medical school coursework, consultations with colleagues, or any source, not merely peer-reviewed journals" for the proposition that a doctor need not take a patient's blood pressure at every doctor's visit. (Emphasis in original.)

The Cochranes argue that the testimony Dr. Azman gave on his own behalf regarding the standard of care in taking a

6

patient's blood pressure was "conclusory and entirely without foundation." They argue that Dr. Rossi "purported to testify based on his training, education and experience including discussions with other physicians[,] . . . [y]et when challenged, . . . was unable [to] provide support for his opinions." Finally, they claim that Drs. Azman and Rossi only "testified in generalities and, when pressed, were unable to substantiate their stated opinions by reference to authoritative sources." Thus, they argue, such testimony is lacking foundation and is "classic 'ipse dixit,'" which is "regularly and properly rejected by the courts."

In response, Dr. Azman argues that he and Dr. Rossi were qualified to give standard of care testimony and opinion testimony and their testimony was reliable and admissible even in the absence of supporting written medical authority.

"Once the basic requisite qualifications are established, the extent of an expert's knowledge of subject matter goes to the weight rather than the admissibility of the testimony." Udac v. Takata Corp., 121 Hawai'i 143, 153, 214 P.3d 1133, 1143 (App. 2009), cert. rejected, 2010 WL 219307 (Jan. 21, 2010) (emphasis added) (quoting Estate of Klink ex rel. Klink v. State, 113 Hawai'i 332, 352, 152 P.3d 504, 524 (2007)). "It is settled law in Hawaii that questions concerning the credibility of witnesses and the weight of the evidence are for the jury alone to decide." Cafarella v. Char, 1 Haw. App. 142, 144, 615 P.2d 763, 766 (1980). See HRE Rule 1102 (stating that juries "are the exclusive judges of all questions of fact and the credibility of witnesses"). We decline to pass upon the jury's determination regarding the weight of expert testimony.

The circuit court did not abuse its discretion by admitting Dr. Azman's and Dr. Rossi's respective testimonies regarding the applicable standard of care. In so holding, we note that under HRE Rule 702, "expert testimony should be liberally admitted at trial." Ditto v. McCurdy, 86 Hawai'i 93, 107-08, 947 P.2d 961, 975-76 (App.), rev'd in part on other

grounds, 86 Hawai'i 84, 947 P.2d 952 (1997). Furthermore, "extensive cross-examination of the expert so as to elicit his or her assumptions and test his or her data is a more practical truth-seeking method than the exclusion of relevant opinion testimony." Ditto, 86 Hawai'i at 109, 947 P.2d at 977 (internal quotation marks, citation, and brackets omitted).

        B.     THE CIRCUIT COURT DID NOT ERR BY FAILING TO GIVE JURY INSTRUCTIONS ON THE FOLLOWING POINTS: (1) IT WAS NEGLIGENT FOR DR. AZMAN (OR A MEMBER OF HIS STAFF) TO NOT TAKE AND RECORD MRS. COCHRANE'S BLOOD PRESSURE AT EACH OFFICE VISIT, (2) IT WAS NEGLIGENT FOR DR. AZMAN TO NOT ADVISE MRS. COCHRANE OF THE INCREASED RISK OF STROKE DUE TO HER FAMILY MEDICAL HISTORY, AND (3) DR. AZMAN HAD A DUTY TO WARN MRS. COCHRANE OF CERTAIN RISKS, SPECIFICALLY HER SIGNIFICANTLY INCREASED RISK OF STROKE.

      The Cochranes contend Dr. Azman breached the applicable standard of care, which is to take a patient's blood pressure at every office visit. They argue that Dr. Rossi "equivocated" when testifying on the applicable standard of care, and Dr. Azman's own testimony on the subject was conclusory and should have been excluded. Therefore, argue the Cochranes, their expert's testimony stands uncontradicted and establishes that Dr. Azman breached his duty of care when he did not take Mrs. Cochrane's blood pressure, and the jury should have been so instructed.

      The Cochranes' proposed instruction necessarily assumes that their expert's opinion regarding the applicable standard of care was more credible than Dr. Azman's expert's opinion. The applicable standard of care was an issue in controversy at trial. "The rule is that a trial court should not give an instruction which assumes an issue in controversy, the reason being that such an instruction invades the province of the jury in determining the facts." Kometani v. Heath, 50 Haw. 89, 92, 431 P.2d 931, 934 (1967). As we have already discussed, "questions concerning the credibility of witnesses are . . . for the jury alone to decide." Cafarella, 1 Haw. App. at 144, 615 P.2d at 766.

This analysis holds true for the circuit court's failure to give jury instructions on subpoints (2) and (3) above, for those were also issues in controversy to be decided by the jury.

C. **THE CIRCUIT COURT DID NOT ERR IN FAILING TO INSTRUCT THE JURY THAT DR. AZMAN OWED A FIDUCIARY DUTY TO MRS. COCHRANE.**

A prerequisite to any negligence action, such as this case, "is the existence of a duty owed by the defendant to the plaintiff that requires the defendant to conform to a certain standard of conduct for the protection of the plaintiff against unreasonable risks." McKenzie v. Hawai'i Permanente Med. Group, Inc., 98 Hawai'i 296, 298, 47 P.3d 1209, 1211 (2002). "Fiduciary duty" is defined as "[a] duty of utmost good faith, trust, confidence, and candor owed by a fiduciary to . . . the beneficiary." Black's Law Dictionary 545 (8th ed. 2004).

The Cochranes argue that the circuit court should have given their proposed "jury instruction on the fiduciary relationship between a doctor and his patient and the duty that arises therefrom." Dr. Azman argues that "[t]o date, Hawaii law has not recognized a separate cause of action for breach of fiduciary duty asserted in the context of alleged medical negligence or malpractice." Furthermore, he points to "[o]ther jurisdictions [that] have rejected a separate cause of action for breach of fiduciary duty where the claim is duplicative of negligence or malpractice claims."

Hawai'i courts have not addressed a claim of breach of fiduciary duty by a doctor to his patient in the context of alleged medical negligence. In Neade v. Portes, 739 N.E.2d 496 (Ill. 2000), Therese Neade, as Independent Administrator of the Estate of Anthony Robert Neade (Anthony), Deceased, claimed that Portes, Anthony's doctor, had committed breach of fiduciary duty and medical negligence while treating Anthony. Id. at 503. The Illinois Supreme Court held that it "need not recognize a new cause of action for breach of fiduciary duty when a traditional

9

medical negligence claim sufficiently addresse[d] the same alleged misconduct." Id. The court noted that "[t]o sustain an action for medical negligence, plaintiff must show: (1) the standard of care in the medical community by which the physician's treatment was measured; (2) that the physician deviated from the standard of care; and (3) that the resulting injury was proximately caused by the deviation from the standard of care." Id. at 502. Similarly, in claiming a breach of fiduciary duty, the plaintiff had to show that (1) a fiduciary duty existed, (2) the fiduciary duty had been breached, and (3) such breach proximately caused the injury to plaintiff. Id.

Applying that analysis to the facts of this case, we hold that the circuit court did not err when it denied to give the Cochranes' jury instruction regarding fiduciary duty. The Cochranes' claims were adequately addressed by the jury instructions regarding medical negligence.

## IV. CONCLUSION

The Judgment filed on July 30, 2008 in the Circuit Court of the Second Circuit is affirmed.

DATED: Honolulu, Hawai'i, February 22, 2011.

On the briefs:

John S. Edmunds
Ronald J. Verga
Joy S. Omonaka
(Edmunds Verga & Omonaka)
James Krueger
Cynthia K. Wong
(Krueger & Wong)
for Plaintiffs-Appellants.

John S. Nishimoto
Patricia T. Fujii
(Ayabe, Chong, Nishimoto,
 Sia & Nakamura)
for Defendants-Appellees.

Presiding Judge

Associate Judge

Associate Judge